UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

RODNEY JESSE SAN NICOLAS, )  Case No. 1:06-CV-00942-LJO
)
Petitioner, )  DEATH PENALTY CASE
)
vs. )  ORDER VACATING HEARING DATE AND
)  GRANTING PETITIONER'S APPLICATION
ROBERT L. AYERS, as Warden )  FOR EQUITABLE TOLLING
of San Quentin State Prison, )
)  Vacated Hearing Date: March 12, 2007
Respondent. )  Courtroom Eight
_____ )

The matter is before the Court on the application of Petitioner Rodney Jesse San Nicolas ("San Nicolas") for an order equitably tolling of the one-year statute of limitations by 188 days. This period represents the number of days between San Nicolas's request for appointment of counsel on July 20, 2006 and the date interim counsel, Wesley A. Van Winkle, began his representation of San Nicolas on January 24, 2007. The application is supported, in part, by a declaration filed under seal by Mr. Van Winkle in which he describes litigation efforts on behalf of his client. Respondent Robert L. Ayers, Jr., as Warden of San Quentin State Prison (the "Warden") opposes the motion. The Warden does not contest the fact that a sealed declaration is offered in support of the application. Based on the facts of this case and controlling law, San Nicolas's request is amenable to decision without a hearing and without reference to the additional facts supplied in Mr. Van Winkle's sealed declaration.

I.      **Procedural Background.**

The parties agree that the statute of limitations under 28 U.S.C. § 2244(d) expires on July 12, 2007, one year following the denial of San Nicolas's state habeas petition by the California Supreme Court. San Nicolas commenced this federal habeas corpus proceeding on July 20, 2006 by filing a

1    request for appointment of counsel and an application for a stay of execution.  The request advised the

2    Court that Mr. Van Winkle, who represented San Nicolas throughout direct appeal and state habeas

3    proceedings was available and willing to continue his representation on federal habeas.  On July 21,

4    2006, the Court granted the request and referred the matter to the Selection Board for the Eastern District

5    of California for recommendation of counsel.  The Selection Board took the matter under consideration,

6    and on January 16, 2007, recommended appointment of Mr. Van Winkle as interim counsel, in spite of

7    a potential for conflict of interest.  The Selection Board informed the Court that the identity of second

8    or co-counsel had not been determined, but the matter was being actively pursued.  After eliciting and

9    reviewing further information regarding the potential for a conflict of interest, the Court appointed Mr.

10   Van Winkle as interim counsel on February 2, 2007.  Mr. Van Winkle's appointment was made

11   retroactive to January 24, 2007.  The number of days between San Nicolas's request for appointment of

12   counsel on July 20, 2006, and the effective date of Mr. Van Winkle's appointment as interim counsel

13   on January 24, 2007, is 188 days.

14   **II.      Proffered Grounds for Equitable Tolling.**

15          The most obvious ground for 188 days of equitable tolling advanced by San Nicolas is that Mr.

16   Van Winkle was not at liberty to begin preparation of a federal petition in the case until his appointment.

17   The impediments to Mr. Van Winkle's investigation and development of federal habeas claims,

18   however, long preceded the commencement of this federal action.  Primary among those impediments,

19   according to San Nicolas, is that financial resources were inadequate in state court for Mr. Van Winkle

20   to complete the investigation of post-conviction claims.  San Nicolas reports that the standard

21   investigation sum of $25,000 authorized by the California Supreme Court was allotted and exhausted

22   by Mr. Van Winkle in early 2001.  An ensuing request for $44,045 in additional funding was denied.

23   As a result, Mr. Van Winkle, among other things, was unable to arrange for interviews of San Nicolas's

24   large and spread out family to develop mitigation evidence.  Family members live in California, Hawaii,

25   and Guam.  In addition, San Nicolas suffers from damage to the frontal lobe of his brain, and expert

26   evaluation, over and above what was developed during state habeas proceedings is said to be required

27   to properly develop federal habeas claims.

28

1    Review of documents also will be a formidable task. San Nicolas reports there are over 42,000

2  pages of documents to review that Mr. Van Winkle has not looked at since 2001, when the state petition

3  for habeas corpus was filed. Obviously, second or co-counsel has not looked at any documents. In

4  addition, Mr. Van Winkle intends to filed a motion for discovery with the Stanislaus County Superior

5  Court pursuant to Penal Code § 1054.9. San Nicolas reports that reviewing these documents could

6  require several months, even with the assistance of second or co-counsel. The complexity of this capital

7  habeas corpus action has been determined to warrant appointment of second or co-counsel. San Nicolas

8  stresses that the delays in appointment of counsel as well as the inadequacy of state court funding are

9  matters beyond his control.

10  **III.    Controlling Precedent.**

11    The statute of limitations under 28 U.S.C. § 2244(d) is not jurisdictional and therefore is subject

12  to equitable tolling. *Calderon v. United States Dist. Ct. (Beeler)*, 128 F.3d 1283, 1288-89 (9th Cir.

13  1997), *overruled in part on other grounds by Calderon v. United States Dist. Ct. (Kelly V)*, 163 F.3d 530

14  (9th Cir. 1998) (en banc), *abrogated on other grounds by Woodford v. Garceau*, 538 U.S. 212 (2003).

15  Equitable tolling under § 2244(d) is available "only when extraordinary circumstances beyond a

16  prisoner's control make it impossible to file a petition on time." *Laws v. Lamarque*, 351 F.3d 919, 922

17  (9th Cir. 2003); *see also Beeler*, 128 F.3d at 1288. "When external forces, rather than a petitioner's lack

18  of diligence, account for the failure to timely file a claim, equitable tolling of the statute of limitations

19  may be appropriate." *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th cir. 1999).

20    Recent Ninth Circuit decisions addressing the standard of equitable tolling described in *Pace v.

21  DiGuglielmo*, 544 U.S. 408 (2005), suggest a less exacting standard. In *Pace*, the Court recites two

22  elements: "(1) that he [the prisoner] has been pursuing his rights diligently, and (2) that some

23  extraordinary circumstance stood in his way." *Id.* at 418, *citing Irwin v. Department of Veterans Affairs*,

24  498 U.S. 89, 96 (1990). *See Espinoza-Matthews v. California*, 432 F.3d 1021, 1026, n. 5 (9th Cir. 2005)

25  (citing *Pace*, 544 U.S. at 418); *Gaston v. Palmer*, 417 F.3d 1030, 1034 (9th Cir. 2005).

26  **IV.    Discussion.**

27    The Warden vigorously argues that equitable tolling is not allowed under 28 U.S.C. § 2244(d)

28  and that this Court should ignore the holding to the contrary in *Beeler*. The arguments are unavailing.

Recent Ninth Circuit authority adheres to the principle that equitable tolling is available in this circuit. *See Espinoza-Matthews*, 432 F.3d at 1026; *Corjasso v. Ayers*, 278 f.3d 874, 878 (9th Cir. 2002). Moreover, as the Warden concedes, no United States Supreme Court case has overruled *Beeler*. In *Pace*, the high court states it has "never squarely addressed the question whether equitable tolling is applicable to the AEDPA statute of limitations." 544 U.S. at 418. This Court is constrained to follow precedent established in this circuit.

Separately, the Warden contends that equitable tolling, even if available, should be denied in San Nicolas's case because he previously raised 27 issues, plus sub-issues, on direct appeal and 18 claims for relief, plus sub-claims, in state habeas proceedings. The Warden maintains that development of these 45-plus claims demonstrates San Nicolas already adequately investigated his case and that with "the simple expedient of a photocopier," he could file his federal petition without further delay. San Nicolas responds that counsel appointed to represent capital habeas petitioners under 18 U.S.C. § 3599(a), as Mr. Van Winkle is, are obligated to investigate relevant claims and to include those claims in a single federal petition. *See McCleskey v. Zant*, 499 U.S. 467, 498 (1991) (a "petitioner must conduct a reasonable and diligent investigation aimed at including all relevant claims and grounds for relief in the first federal habeas petition"). San Nicolas argues these principles apply with even greater force to his case, where state resources were inadequate to conduct an adequate or complete investigation of claims.

The Warden offers no authority for the proposition that partial investigation of claims in state court obviates the need for further investigation in federal court, especially in view of the well-understood fact that state funding is extremely limited. Nor is there any support for the notion that passage of the AEDPA in 1996 in any way abrogated the responsibility of appointed counsel to thoroughly investigate federal habeas claims. The Warden's ancillary argument that Mr. Van Winkle had ample *time* to conduct a complete investigation in state court ignores the fact that he did not have adequate *resources* to do so. The fact that San Nicolas developed a number of substantial claims in state court does not preclude equitable tolling in this federal proceedings.

The Warden's final argument is that further habeas investigation in federal court would be pointless because any new claims developed would be unexhausted. While the Warden is quite correct to say that all legal and factual claims must be exhausted in state court before a federal court can even

consider granting relief, there is no authority for the proposition that the development of claims must be completed in state court.  To the contrary, the Supreme Court has recognized in *Rhines v. Weber*, 544 U.S. 269, 275-76 (2005) that abeyance of post-AEDPA federal petitions is some times appropriate to permit petitioners to exhaust claims developed in federal court.  In any event, the contention that all investigation and fact development must be conducted in state court, again, ignores the reality that state resources are unavailable for counsel to conduct a complete investigation.  Should San Nicolas develop new federal claims in the course of federal investigation, and those claims are presented in a federal petition, the issue of his entitlement to abeyance during state exhaustion of those claims will be addressed at the appropriate time.

San Nicolas attaches 14 orders to his moving papers in which District Courts in the Northern, Central, and Eastern Districts have all granted equitable tolling in whole or in part on grounds that appointment of counsel was delayed.  Although judicial notice of these orders has not been requested, this Court can conclude that San Nicolas's present request is far from anomalous.

**V.      Other Matters.**

Three ancillary matters relate to the analysis of San Nicolas's request for equitable tolling.  The first relates to the anticipated permissible scope of pre-petition investigation in the potential for a further request for equitable tolling should there be a substantial delay in appointment of second or co-counsel.  The second relates to conduct of the Warden's counsel in connection with filing the opposition brief.  The third relates to a prior request of this Court directed to the Warden's counsel to complete a Case Evaluation Form.

**A.      Permissible Pre-Petition Investigation and the Potential for a Subsequent Request for Equitable Tolling.**

San Nicolas was convicted of the stabbing murders of his wife and her nine-year-old niece.  Four death eligibility special circumstances were found true: (1) multiple murder; (2) killing the niece to prevent testimony of a witness; (3) killing in the course of raping the niece; and (4) killing in the course of committing a lewd or lascivious act on the niece.  *People v. San Nicolas*, 34 Cal. 4th 614, 624 (2005). At the time of the crimes, San Nicolas was 36 years old and recently had been paroled from prison on an embezzlement conviction. The Court has reviewed the trial evidence regarding the events leading up

to the murders, the murders, and San Nicolas's subsequent capture in Nevada as described in the California Supreme Court opinion.  In light of these facts, the Court does not share Mr. Van Winkle's view that pre-petition investigation necessarily should include travel within California, as well as to Hawaii and Guam, to conduct interviews with San Nicolas's many siblings and relatives.  To the extent a social history will be necessary to develop mitigation evidence, it is the Court's view that San Nicolas's litigation team members should be able to accomplish this task with less than comprehensive interviews of multiple relatives.  Given the facts of the case and San Nicolas's age, the Court will require justification for developing background evidence as mitigating evidence.  Evidence that San Nicolas suffers from frontal lobe damage appears more relevant in mitigation to the crimes, but justification in this area also will be required.  Limitations imposed on pre-petition investigation and travel will affect the time necessary to prepare San Nicolas's federal petition.  These factors will be considered by Court should San Nicolas apply for further equitable tolling in the event that the Selection Board is unable to recommend second or co-counsel promptly.

### B.    Conduct of the Deputy Attorney General in Connection with Filing the Warden's Opposition Brief.

Due to a calendaring error, Mr. Van Winkle filed San Nicolas's motion for equitable tolling with only 25 days notice rather than the 31 days required under to Local Rule 78-230(b).  The motion was set for hearing on the Court's calendar by the Clerk's Office staff.  Mr. Van Winkle notified the Deputy Attorney General assigned to the case, Charles French, of the filing and hearing date by e-mail on February 15, 2007, the day Mr. Van Winkle electronically filed the motion.  Mr. French acknowledged Mr. Van Winkle's e-mail and thanked him for the information on the same day.  The Court's death penalty staff attorney assigned to the case was unaware of the calendaring error.

Thirteen days before the hearing, the Court's staff attorney contacted counsel for the Warden, Mr. French, by e-mail to inquire whether the Warden intended to oppose the motion.  Under Local Rule 78-230(c), opposition briefs are due fourteen days before court hearings.  A different Deputy Attorney General assigned to the case, Patrick Whelan, responded by e-mail that since the hearing date was mis-calendared, the Warden's opposition brief in fact was not due until seventeen days before the date on which the hearing *should have been* calendared (eleven days before the hearing).  The staff attorney

informed Mr. Whalen that the local rule regarding opposition papers was written for the benefit of the Court (so cases could be worked up in time for a meaningful hearing) and was based on when a hearing is set, not when it should have been set.  Mr. Whalen replied as follows:

> I apologize for my misunderstanding.  For future reference, could you clarify something about your interpretation of the local rule for me?
>
> In this case, the application was e-filed on February 15, 2007, with a hearing noticed for March 12, 2007.  Since February has only 28 days, this means that the hearing was noticed for 25 days after filing.  However, LR 78-320(b) provides that "[t]he matter shall be set for hearing . . . not less than thirty-one (31) after mailed of electronic service and filing . . . "
>
> As I understand from your email, the above-quoted passage does not operate as a limit on when motions can be calendared in relation to the filing.  In other words, I could file a motion, notice it for hearing within two weeks, and then the opposing party would already automatically be too late to file an opposition.  That seems counter-intuitive, but I would like the rest of our office to know if that is in fact the rule.
>
> Any assistance you can provide would be appreciated.

(Ellipses in original.)  The staff attorney declined to respond to Mr. Whalen's apparently rhetorical inquiry, and instead advised him he was "at liberty to request postponement of the hearing date because of the timing issue."

On February 28, 2007, Mr. Whalen filed an alternative request to postpone the hearing or deem the Warden's opposition brief filed on the same day (February 28, 2007) as timely.  In this request, Mr. Whalen complained that the "clerk in this case" filed to follow the local rules regarding proper notice, and instead emailed the Warden's counsel about the opposition.  The remainder of the request sets forth the facts stated above.  The Court granted the alternative request that the Warden's opposition filed on February 28, 2007 was deemed timely.

The inquiry e-mailed by Mr. Whalen, as set out above appears to be sarcastic and rhetorical.  The reference to the Court's death penalty staff attorney in the alternative request to postpone the hearing or deem the opposition brief timely as the "clerk in this case" appears to be demeaning and insulting.

### C.   Request Directed to the Warden to Complete a Case Evaluation Form.

In the Court's February 2, 2007 order appointing Mr. Van Winkle as interim counsel, both Mr. Van Winkle and counsel for the Warden were directed to complete a Case Evaluation Form.  As explained in the order, the Case Evaluation Form is found as Appendix B to the Guide to Case

1  Management and Budgeting in Capital Habeas Cases, Eastern District of California, Fresno Division

2  (hereafter the "Attorney Guide").  The Warden and his counsel specifically were encouraged "to become

3  familiar with the Guide, most recently updated in January 2007, and posted on the Court's web-page

4  (under Fresno, 'Attorney Info,' Forms)."  Mr. Van Winkle did complete a Case Evaluation Form, which

5  he submitted to the Court confidentially.  The Court has not received a Case Evaluation Form from the

6  Warden's counsel.

7  **VI.   Order.**

8      The request of San Nicolas for equitable tolling of the statute of limitations by 188 days is

9  granted.  The lengthy delay in appointing qualified counsel, which was completely beyond the control

10 of San Nicolas, constitutes an "extraordinary circumstance" within the meaning of *Beeler*, 128 F.3d at

11 1288, and *Lamarque*, 351 F.3d at 922.  This delay has made the filing of a comprehensive habeas

12 petition within the statutory limitations period impossible.  The assistance of counsel is essential to the

13 preparation of a fully investigated federal habeas petition in complex capital cases. This case, in

14 particular, involves tens of thousands of pages of documents in the record and to be discovered.  The

15 188-day period between San Nicolas's request for counsel and the appointment of Mr. Van Winkle as

16 interim counsel is a reasonable time for equitable tolling.  The new due date for San Nicolas's federal

17 petition is extended from July 12, 2007 to January 16, 2008.  The foregoing determination is made solely

18 on the basis for the publicly filed moving and opposing papers and not on the declaration of Mr. Van

19 Winkle filed under seal.

20     Mr. Van Winkle is directed to advise the Court within 15 days from the filing of this order

21 whether he believes further tolling of the limitations period will be necessary.  In his response, Mr. Van

22 Winkle should include an estimate of when he anticipates making such further application.

23     The circumstances of the filing of the Warden's opposition brief indicate that the Deputy

24 Attorney General was sarcastic and insulting to the Court's staff attorney.  If the Deputy Attorney

25 General disputes this representation, he is to file a 'Request for Evidentiary Hearing' and this Court will

26 conduct a hearing and make findings.  If the Deputy Attorney General does not dispute the

27 representation, he is admonished not to repeat the behavior.

28

There has been a failure by the Warden's counsel to comply with the February 2, 2007 request to complete a Case Evaluation Form.  The Warden is ordered to be complete a Case Evaluation Form and return to the Court within 20 calendar days from the filing of this order.  The Warden may file the Case Evaluation Form confidentially or publicly, at the option of his counsel.

        IT IS SO ORDERED.


Dated:    March 9, 2007

                                                    /s/ Lawrence J. O'Neill
                                                  Lawrence J. O'Neill
                                              United States District Judge