UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RODNEY JESSE SAN NICOLAS,<br><br>　　　　　Petitioner,<br><br>　vs.<br><br>ROBERT L. AYERS, JR., as Warden<br>of San Quentin State Prison,<br><br>　　　　　Respondent. | Case No. 1:06-CV-00942-LJO<br><br>DEATH PENALTY CASE<br><br>ORDER DENYING PETITIONER'S MOTION TO STAY LITIGATION OF FEDERAL HABEAS PROCEEDINGS, VACATING HEARING DATE, AND ADMONISHING RESPONDENT'S COUNSEL<br><br>HEARING DATE: August 27, 2007 (VACATED) |

This matter is before the Court on the motion of Petitioner Rodney Jesse San Nicolas ("San Nicolas") to stay litigation of federal habeas proceedings pending completion and filing of his petition on or before January 16, 2008. The motion is opposed by Respondent Robert L. Ayers, Jr., as Warden of San Quentin State Prison (the "Warden"). The Court has reviewed the moving, opposing, and reply briefs and has determined a ruling is appropriate without oral argument. *See* Local Rule 78-230(h).

**I.　Summary of Relevant Filings and Proceedings.**

The following dates and events inform the Court's analysis of San Nicolas's motion:

| | |
|---|---|
| July 20, 2006 | San Nicolas commenced this federal habeas action by filing a combined application requesting appointment of counsel, a stay of execution, and to proceed *in forma pauperis.* (Documents 1 & 2.) |
| July 21, 2006 | The Court granted San Nicolas's request for appointment of counsel and referred the matter to the Eastern District Selection Board. (Document 5.) |
| February 2, 2007 | The Section Board recommended and the Court appointed Wesley A. Van Winkle as interim counsel, effective January 24, 2007. (Document 19.) |

| | | |
|---|---|---|
| 1 | March 9, 2007 | The Court granted San Nicolas's vigorously contested motion for equitable |
| 2 | | tolling of the statute of limitations from July 12, 2007 to January 16, 2008 (188 |
| 3 | | days) due to the delay in appointment of counsel. (Document 32.) |
| 4 | March 20, 2007 | Mr. Van Winkle submitted under seal a proposed budget and case management |
| 5 | | plan for Phase I of the litigation. (Document 35.) |
| 6 | March 30, 2007 | The Court appointed Assistant Federal Defender Harry Simon as co-counsel to |
| 7 | | Mr. Van Winkle. (Document 41.) |
| 8 | March 30, 2007 | The Court filed an order under seal approving a comprehensive Phase I budget |
| 9 | | and case management plan for record review and preliminary investigation. |
| 10 | | (Document 40.) |
| 11 | June 21, 2007 | The Court conducted a case management conference on Phase II of the litigation, |
| 12 | | wherein the Warden's counsel indicated he might file a motion to dismiss San |
| 13 | | Nicolas's action shortly after July 12, 2007. |
| 14 | June 22, 2007 | The Court filed an order following the Phase II case management conference |
| 15 | | directing the Warden to advise the Court whether he intended to file a motion to |
| 16 | | dismiss, and if so, to specify the grounds. (Document 46.) |
| 17 | June 25, 2007 | The Warden advised the Court he did intend to file a motion to dismiss on the |
| 18 | | dual grounds that (1) under *Bowles v. Russell*, 551 U.S. ___, 127 S. Ct. 2360 |
| 19 | | (2007), jurisdictional time limits set by Congress cannot be equitably extended, |
| 20 | | and (2) AEDPA does not permit equitable tolling. (Document 49.) The intended |
| 21 | | motion necessarily would challenge the equitable tolling order. |
| 22 | June 27, 2007 | The Court filed an order under seal approving a comprehensive Phase II budget |
| 23 | | and case management plan for petition preparation and exhaustion. The budget |
| 24 | | order recognized that San Nicolas would be filing a "protective petition" pursuant |
| 25 | | to *Pace v. DiGuglielmo*, 544 U.S. 408, 416 (2005), on or before the expiration |
| 26 | | of the original limitations period, July 12, 2007, on account of the Warden's |
| 27 | | expressed intent to challenge the March 9, 2007 equitable tolling order. |
| 28 | | (Document 50.) |

July 12, 2007         San Nicolas filed a protective petition identifying eight new, previously unexhausted claims (document 52) and the instant motion (document 51).

## II.     San Nicolas's Argument.

Having filed a protective petition under *Pace*, 544 U.S. 408, San Nicolas explains that the purpose of his motion is to stay further litigation by the Warden in this action until he (San Nicolas) files his full petition on or before January 16, 2008, the due date provided in the equitable tolling order. He is trying to complete development of all federal claims without further interruption or distraction. In support of the motion, San Nicolas relies on *Rhines v. Weber*, 544 U.S. 269 (2005), for the proposition that district courts have authority to issue stays in federal cases under exercise of judicial discretion. *Rhines*, in turn, relies on *Landis v. North American Co.*, 299 U.S. 248 (1936). In *Rhines*, the Supreme Court determined the district court had discretionary authority to hold in abeyance a partially exhausted (or "mixed") habeas petition while the petitioner returned to state court to present his unexhausted federal claims to the state tribunal. 544 U.S. at 276. *North American Co.* involved a challenge to the constitutionality of the Public Utility Holding Company Act of 1935 before the District of Columbia district court in the face of the same constitutional challenge pending in over 40 other civil cases throughout the country. 299 U.S. at 249, 252. Notwithstanding the fact that the various civil actions were being prosecuted by completely separate and unrelated plaintiff utility companies, the Court held the power of the District of Columbia district court "to stay the proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for the litigants." *Id*. at 254.

Focusing on the discretion to stay proceedings under *Rhines*, San Nicolas recites the three requirements imposed by the Court to qualify for a stay of federal proceedings during state exhaustion proceedings: (1) good cause for the petitioner's failure to exhaust his claims previously in state court; (2) the claim or claims sought to be exhausted are not plainly meritless; and (3) the petitioner must act diligently in exhausting his/her claims so the stay of the petition in federal court is not indefinite. 544 U.S. at 277. San Nicolas imports these three considerations into his present request: (1) good cause for the delay in developing his federal claims, (2) the claims being developed are not plainly meritless, and (3) he has (and will be) diligent so that the stay will not be indefinite.

San Nicolas concedes that *Rhines* is not "a perfect fit," since in his case it is not possible to evaluate the merits of the claims he is developing for the full federal petition. He notes, however, that the Court approved Phase I and Phase II budgets so he would be able to develop claims, and that this approval is a tacit finding that the Court found the claims being developed to have some merit. In his reply brief, he further points out that in Section VIII.D. of the protective petition, at pages 566-582, he describes eight new claims "in development," which demonstrate substantive claims. He also maintains that he has established the other two requirements for a stay under *Rhines*. First, he argues he has shown good cause for not previously developing the federal claims due to the delay in appointment of counsel. Next he argues he is being diligent in meeting and he will meet the Court's previously imposed time limit, January 16, 2008, consistent with the March 9, 2007 equitable tolling order.[1]

In his reply brief, San Nicolas also refers to a case pending in the Central District of California, *Panah v. Ayers*, Case No. 05-cv-7606 RGK, in which the district court granted a motion filed by the petitioner very similar to the instant motion. In *Panah*, the petitioner filed a protective petition approximately six months before the statute of limitations was set to expire under § 2244(d). He filed the protective petition as an assurance that he would receive federal review of his claims in the event Chapter 154 of Title 28 (§§ 2261-2666) were to become effective in the ensuing six month period and the limitations period was thereby shortened from one year to six months. The protective petition was conceded to be fully exhausted by both parties. The Warden in that case then filed an answer to the protective petition and urged the court to proceed with the litigation, even though the petitioner's litigation team was working diligently on trying to complete preparation of the full petition due approximately five months from the Warden's answer. Although the rationale in *Rhines* was not fully

---

[1] Besides arguing that a stay of litigation is appropriate under *Rhines*, San Nicolas also maintains that any challenge to the equitable tolling order would be frivolous. Notably, he argues the Warden's intended reliance on *Bowles*, 551 U.S. at ___, 127 S. Ct. at 2366, for the proposition that *jurisdictional* time limits cannot be extended under equitable principles would be misplaced. This follows because the Supreme Court held just last year that the statute of limitations under 28 U.S.C. § 2244(d)(2) (applicable to the instant habeas action) is *not jurisdictional*. San Nicolas also points out that if the Warden were to re-argue the point that equitable tolling is not permitted under AEDPA, the Court already has rejected that argument and no grounds exist for reconsideration. The fact that the Warden did not pursue mandamus with the Ninth Circuit on this issue would further militate against crediting the reiterated argument. Since the Warden apparently has abandoned the idea to file a motion to dismiss for failure to comply with the statute of limitations, whether the motion would fail or succeed is not at issue.

applicable, since the merits of the claims to be developed in *Panah* could not be assessed and the protective petition was conceded to be fully exhausted, the court granted the petitioner's motion based on the short duration of the requested stay and its inherent authority to control its own docket and calendar, citing *North American Co.*, 299 U.S. at 245-55.  The court also was persuaded by the fact that the petitioner was endeavoring to plead all federal claims in his full petition before the one-year statute under § 2244(d) expired.

**III.    The Warden's Argument.**

Relying on *Rhines*, 544 U.S. 269, the Warden argues San Nicolas cannot benefit from the stay and abeyance procedure explained in that case because he (San Nicolas) alleges "by implication" that his protective petition is fully exhausted and not mixed.  He characterizes San Nicolas's request for a stay as "predicated upon the speculative notion that he will be able to develop new claims, despite the fact that in the 15 years since his conviction, he has already developed what one might think are the most logical bases to challenge the constitutionality of the judgment."  He also asserts that San Nicolas was "duty-bound" to present his strongest arguments in prior proceedings and his failure to articulate the nature of the claims yet to be developed demonstrates the absence of good cause for a stay of the proceedings.  He asserts San Nicolas's ability to develop new claims is speculative, that new meritorious claims cannot be developed, and that it is possible San Nicolas will inform the court six months from now that there were no additional claims to be developed.  Next, the Warden argues San Nicolas is engaging in intentional delay tactics to forestall his execution.  He maintains that any new claims San Nicolas develops will be subject to dismissal for being time barred, unexhausted, and procedurally defaulted.  He further complains that San Nicolas has not presented the Court with a meaningful way to evaluate the merits of the proposed claims.  Finally, he argues that a stay entered to response to San Nicolas's motion would be indefinite, since it would be followed by another stay request for exhaustion of state remedies in the California Supreme Court, yet San Nicolas has not indicated when he may present that subsequent state habeas petition.

**IV.    Analysis.**

The Warden's characterization of claims San Nicolas is developing for the full petition as meritless and futile is incorrect and any argument to that effect is premature.  As evidenced by the filing

of orders approving two budget and case management plans, the Court is persuaded that San Nicolas *can* develop additional claims in the full petition. The bare allegations of eight claims pleaded in the protective petition demonstrate that the claims are not plainly meritless.[2] Although the budget proceedings were conducted confidentially, pursuant to 18 U.S.C. § 3599(f), the fact budgets were approved *was* known to the Warden. The Warden and his counsel should be assured that the matter of San Nicolas's claim development has been carefully scrutinized by the Court.

Next, despite acknowledging that new, unexhausted claims are described in the protective petition, the Warden posits San Nicolas, by implication "is alleging that the instant petition is fully exhausted." The contention is specious on its face. The Warden also implies that San Nicolas's continuing counsel[3] breached his duty to present his strongest claims in state proceedings over the last 15 years. It strains credulity to imagine the Warden and his counsel are not aware that severe funding shorfalls inherent in state post-conviction proceedings prevent full development of habeas claims. Based on the claims already pleaded in the protective petition, the Warden urges there is no reason for the Court not to proceed with the case. Again, this position ignores the case management conferences, the publicly filed orders memorializing the case management conferences, including mention that budgets have been approved for development of San Nicolas's case. This Court is affording San Nicolas the opportunity under federal statute to develop federal claims he was unable to develop in state court due to funding restrictions. The Warden next misrepresents the substance of the protective petition as a 584-page pleading San Nicolas's litigation team managed to file in the space of 17-days. In fact, as San Nicolas explains in his reply brief, his attorneys "cobbled" the protective petition together based on claims previously raised on direct appeal and state habeas, plus new claims that are being developed, but for which investigation has not been completed. It is not a complete document. The protective petition makes San Nicolas's position clear in this regard. The Warden maintains that the stay requested by San Nicolas in the instant motion would be indefinite since it would be followed by yet another stay

---

[2] Whether these claims ultimately will entitle San Nicolas to relief will be decided after the full petition is filed, the Warden has an opportunity to file an answer, and both parties file their points and authorities.

[3] Mr. Van Winkle represented San Nicolas on direct appeal and in state habeas proceedings.

1 request for exhaustion of state remedies in the California Supreme Court and that San Nicolas has not
2 indicated when he may present that subsequent state habeas petition.  But, San Nicolas *has* indicated
3 when he will present his subsequent state habeas petition – contemporaneous with the filing of his full
4 federal petition on or before January 16, 2008.[4]  *See* June 22, 2007 Order Following Phase II-A Case
5 Management Conference (Doc. 46, 3:1-2).  The Warden erroneously suggests that San Nicolas hasn't
6 made his litigation intentions clear all along.  The Warden's argument about an indefinite stay is
7 especially unpersuasive because the Warden recognizes there would be two separate stays, and only the
8 first is the subject of the present motion.  Accordingly, it is obvious that the stay San Nicolas requested
9 in the present motion would be definite, and lifted when the full petition is filed.

10 Notwithstanding the flaws in the Warden's opposition and the argument of both parties, not to
11 mention the order issued by the Central District in *Panah v. Ayers*, that *Rhines*, 544 U.S. 269, informs
12 the present inquiry, this Court does not agree that *Rhines* is applicable, even by analogy.  That case, like
13 *North American Co.*, 299 U.S. 248, involves holding an entire pending case in abeyance while a related
14 case is litigated before another tribunal.  Neither *Rhines* nor *North American Co.* provides authority that
15 a court may stay litigation in a pending case as to *selected* parties.  San Nicolas's concession that *Rhines*
16 is not "a perfect fit" is an understatement.  The Warden's attempt to apply *Rhines* and then argue that
17 San Nicolas does not qualify for the abeyance procedure permitted by *Rhines* is unavailing.

18 The concept of good cause for San Nicolas's inability to develop all of his claims earlier because
19 of the delay in appointment of counsel is not related to the Warden's desire to proceed with litigation.
20 It is grounds for equitable tolling, as the Court previously ruled on March 9, 2007.  Nor are the relative
21 merits of San Nicolas's potential claims a basis to prevent the Warden from proceeding with litigation,
22 should there be a legal issue requiring resolution.  Finally, the Court is well aware of San Nicolas's
23 diligence in developing claims and perfecting a complete federal petition.  But this also is not grounds
24 to prevent the Warden from litigating justiciable issues.  The Court requires no further argument from
25 counsel on this issue.  The motion to stay federal litigation of federal habeas proceedings pending

---

28 [4] Mr. Simon and Mr. Van Winkle advised the Court and counsel for the Warden of this fact at the June 21, 2007 Phase II case management conference.

completion of the full federal petition is denied.  The hearing scheduled for oral argument on the motion is vacated.

Although there is no legal basis for preventing the Warden from proceeding with litigation of this case, there is nothing currently in controversy.  San Nicolas's protective petition is partially unexhausted, and therefore not ready to be litigated, his full, partially unexhausted petition will be filed on or before January 16, 2008, his subsequent state habeas petition (to exhaust unexhausted claims) will be filed contemporaneously with his full federal petition, and his motion to hold federal proceedings in abeyance during pendency of the exhaustion petition[5] will be filed in the same time frame.  The Court will not expect to see further briefing from the Warden until San Nicolas files his anticipated motion to hold federal proceedings in abeyance. Should any matter arise in the interim which the Warden wishes to litigate, however, the Court may establish a briefing schedule to accommodate San Nicolas's litigation team so a complete federal petition may be timely filed within the limitations period under § 2244(d) established in the equitable tolling order.

## V.   Admonishment to the Warden and His Counsel.

In opposing the within motion, counsel for the Warden variously misrepresented the record and employed unnecessary sarcasm in presenting his arguments. The Court finds the assertions summarized above  to be examples of unprofessionalism on the part of the Warden's counsel.  This is not the first time, the Court has been confronted counsel's sarcastic and unprofessional conduct. *See* March 9, 2007 Order Granting Petitioner's Application for Equitable Tolling (Doc. 32, 6:16-7:24, 8:23-27).   The Warden and his counsel are admonished that if the Court is presented with further unprofessional conduct of counsel, the Court will issue an order to show cause for sanctions.

IT IS SO ORDERED.


Dated:   August 22, 2007

/s/ Lawrence J. O'Neill
Lawrence J. O'Neill
United States District Judge

---

[5] That motion properly will be under the authority of *Rhines*, 544 U.S. 269.