UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RODNEY JESSE SAN NICOLAS,<br><br>    Petitioner,<br><br>    vs.<br><br>ROBERT L. AYERS, JR., as Warden<br>of San Quentin State Prison,<br><br>    Respondent. | Case No. 1:06-CV-00942-LJO<br><br>DEATH PENALTY CASE<br><br>ORDER DENYING RESPONDENT'S<br>REQUEST FOR MODIFICATION OF<br>AUGUST 22, 2007 ORDER |

**I.    Overview.**

This matter is before the Court on the request of Respondent Robert L. Ayers, Jr., as Warden of San Quentin State Prison (the "Warden") to modify the Court's order issued on August 22, 2007 (the "August order"). The August order denied the motion of Petitioner Rodney Jesse San Nicolas ("San Nicolas") to stay litigation of federal proceedings, vacated the previously scheduled hearing date on the matter, and admonished the Warden's counsel about unprofessional conduct noted in his opposition to San Nicolas's unsuccessful motion. The Warden asks that the Court modify the August order by deleting the following specific passages:

    1.    "Although the budget proceedings were conducted confidentially, pursuant to 18 U.S.C. § 3599(f), the fact budgets were approved *was* known to the Warden." (August order p. 6, lines 3-5.);

    2.    "It strains credulity to imagine the Warden and his counsel are not aware that severe funding shorfalls inherent in state post-conviction proceedings prevent full development of habeas claims." (August order, p. 6, lines 11-12.);  and

3. "Admonishment to the Warden and His Counsel. In opposing the within motion, counsel for the Warden variously misrepresented the record and employed unnecessary sarcasm in presenting his arguments. The Court finds the assertions summarized above to be examples of unprofessionalism on the part of the Warden's counsel. This is not the first time, the Court has been confronted counsel's sarcastic and unprofessional conduct. *See* March 9, 2007 Order Granting Petitioner's Application for Equitable Tolling (Doc. 32, 6:16-7:24, 8:23-27). The Warden and his counsel are admonished that if the Court is presented with further unprofessional conduct of counsel, the Court will issue an order to show cause for sanctions." (August order, p. 8, lines 14-21.)

## II.     Knowledge of Budget Approvals.

The body of instant request seeks a modification of the August order to reflect that while the Warden knew of the fact that the Court had approved two budgets for San Nicolas, he did not know the actual contents of the budget requests or the budget approval orders. It is undisputed that the Warden is not made aware of the contents of San Nicolas's confidential budget requests or the contents of the Court's confidential orders approving San Nicolas's budget requests. The Court understands that the Warden has no way of knowing how much of San Nicolas's budgeting requests have been granted. The exact modification requested, however, would delete the sentence stating that the Warden knew budgets had been approved. This conflicts with the body of the argument and the facts the case. The requested modification will not be implemented.

In making his request, the Warden further points to the "general practice" in the Eastern District of conducting confidential proceedings without notice to him. He argues that he should have an opportunity to be heard regarding the need for confidentiality under 18 U.S.C. § 3599(f) and suggests that the Court's orders possibly would be more balanced if he were permitted to participate.

Without regard to how budgeting conferences are conducted in other cases, in this case, the Warden has been made aware that budgeting matters would be addressed following the public portion of the two case management conferences conducted by the Court. The case management conference ("CMC") for Phase I of the litigation was conducted on March 29, 2007 and is memorialized in a public

1  order filed the following day (doc. 39).  Deputy Attorney General Charles A. French appeared
2  (telephonically) on behalf of the Warden.  The matters discussed at the Phase I CMC include time
3  estimates for San Nicolas's counsel to prepare the federal petition, how long Phase I would last, and a
4  time estimate from Mr. French as to when he could lodge the state record.  Following discussion of these
5  topics, the Court excused Mr. French from further participation in the CMC so matters of funding and
6  budget preparation could proceed ex parte with San Nicolas's appointed counsel, CJA counsel Wesley
7  A. Van Winkle and Assistant Federal Defender Harry Simon.  Mr. French voiced no objection to this
8  procedure.

9       A second CMC, regarding Phase II of the litigation, was conducted on June 21, 2007, and
10 memorialized in a public order filed the next day (doc. 46).  Again, Mr. French was present at the
11 hearing (appearing telephonically) on behalf of the Warden.  The matters discussed at the second CMC
12 included the types of litigation activities the Court ordinarily expects in Phase II of the capital habeas
13 proceedings.  The fact that the issue of procedural default and the statute of limitations are considered
14 affirmative defenses was discussed.  Counsel for the parties, including Mr. French, agreed to this
15 proposition. The fact that the Court would not consider procedural default issues prior to addressing the
16 merits of the anticipated petition was discussed.  The fact that the statute of limitations had been
17 equitably tolled from July 12, 2007 to January 16, 2008 by order issued March 9, 2007 also was
18 discussed.  Notwithstanding the tolling of the limitations period and Mr. French's agreement that the
19 statute of limitation is considered an affirmative defense, Mr. French advised the Court that the Warden
20 possibly would be filing a motion to dismiss the petition shortly after July 12, 2007 based on the statute
21 of limitations.  The Court requested clarification from the Warden regarding his tentative plans to move
22 to dismiss the petition.  There was further discussion about San Nicolas filing his complete federal
23 petition by January 16, 2008, the fact that he also would be filing a state exhaustion petition, and
24 accordingly would move for abeyance of federal proceedings during state exhaustion proceedings.
25 Finally, the issue of applicability of Chapter 154 of Title 28, § 2261, *et. seq.*, was discussed with the
26 Court requesting further information from Mr. French about the intention of the State Attorney General
27 to request certification for Chapter 154 applicability from the United States Attorney General.
28 Following discussion of the foregoing topics, the Court excused Mr. French from further participation

in the hearing so matters of funding and budget preparation could proceed ex parte with Messrs. Van Winkle and Simon. Again, Mr. French voiced no objection to this procedure. Nor did he request an opportunity to be heard regarding the need for confidentiality of the budget discussions.

Based on this history, the suggestion that confidential budgeting proceedings in advance of the August order were conducted without notice to the Warden is incorrect. While the Court cannot warrant that ex parte communications with Mr. Van Winkle do not occur in connection with voucher review and specific budget issues, the main budget evaluations in this case were conducted with notice to the Warden following the Phase I and Phase II CMCs conducted on March 29, 2007 and June 21, 2007, respectively. Consistent with the Court's practice in this case, in the future, when the Court conducts a CMC, all parties will be included in the discussion and then the Court will announce that budget matters will be taken up with counsel for San Nicolas confidentially. The Warden, through his counsel, remains at liberty to request to be heard on the need for confidentiality.

**III.      Severe Funding Shortfalls Inherent in State Post-Conviction Proceedings.**

The Warden argues that while he is aware of *claims* that severe funding shortfalls inherent in state-post conviction proceedings prevent full development of habeas claims in state court, he is not aware that these claims represent established fact. This may be true; it may be a matter of opinion held by the Office of the State Attorney General. The Court notes in the present request that the Warden cites to a recent law review article authored by Judge Arthur L. Alarcón, entitled <u>Remedies for California's Death Row Deadlock</u>, 80 S. Cal. L. Rev. 697 (2007). In his article, Judge Alarcón identifies a number of reasons death penalty appeals and post-conviction proceedings have become so protracted in California. Among these is the inadequate compensation of attorneys appointed to represent persons sentenced to death. *Id*. at 718-20. Judge Alarcón notes that Chief Justice Ronald George of the California Supreme Court also has acknowledged the lack of adequate compensation. *Id*. at 718, n. 120. Judge Alarcón recommends that the California State Legislature increase the hourly rate for counsel representing condemned persons. *Id*. at 734, 743, 744. He further recognizes that under California procedure "relatively few resources are devoted to investigating a petitioner's habeas corpus claims at the state court level." *Id*. at 742. He refers to the $25,000 authorized for habeas investigation as insufficient with the result being that "many claims are not fully explored." *Id*. Under the current

system, Judge Alarcón writes: "[t]he practical effect of underfunding the investigations that must occur in developing an inmate's habeas corpus claims at the state level is that the federal government ultimately pays for the investigation years later when the inmate files a federal habeas corpus petition." *Id*. at 744.

Whether the Warden agrees with the notion that funding practices in the California Supreme Court are inadequate to develop habeas corpus claims at the state level, the fact that the argument has been made, and recently reiterated by Judge Alarcón is undisputed. The Warden concedes he is aware of the *claim* that habeas proceedings in state court are subject to severe funding shortfalls. The Court declines to modify the August order.

**IV.    Misrepresentations in the Warden's Opposition Brief Precipitating the August Order.**

The Warden requests that the admonishment directed to Deputy Attorney General Patrick Whelan be deleted from the August order in its entirety. He argues that in two instances cited by the Court in the August order, there were no misrepresentations constituting unprofessional conduct, and in one instance the misrepresentation was regrettable, but merely careless. The Warden points out that the Court misunderstood a passage in the Warden's opposition brief about Mr. Van Winkle's duty to present his strongest claims in state proceedings. Second he maintains that the statement in the opposition that San Nicolas's claims "in development," as summarized in the protective petition, are meritless was merely an argument, not a misrepresentation. The fact that the Court does not agree with the argument doesn't make it a misrepresentation. Finally although the statement in the opposition that San Nicolas has not alleged when he plans to file his state exhaustion petition is conceded to be a mistake, it is not an intentional misrepresentation.

Having reread the Warden's opposition brief and the August order, the Court will not modify the that order to vacate the admonishment. As explained in the order, the element of sarcasm as well as misrepresentations (although not gross) constitutes unprofessional conduct. As further explained in the August order, these instances of unprofessional conduct are not isolated.

**V.      Order.**

The Warden's request to modify the August order to delete three identified passages is denied.

IT IS SO ORDERED.

Dated:    September 17, 2007

                                                                    /s/ Lawrence J. O'Neill
                                                                    Lawrence J. O'Neill
                                                                    United States District Judge